BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
SARAH BOOT (253658)
701 B Street, Suite 1700
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
sboot@bholaw.com

FINKELSTEIN & KRINSK LLP
JEFFREY R. KRINSK (109234)
WILLIAM R. RESTIS (246823)
DAVID J. HARRIS, JR. (286204)
550 West C Street, Suite 1760
San Diego, CA  92101
Tel: 619/238-1333
619/238-5425 (fax)
jrk@classactionlaw.com
wrr@classactionlaw.com
djh@classactionlaw.com

ROBBINS ARROYO LLP
BRIAN J. ROBBINS (190264)
KEVIN A. SEELY (199982)
ASHLEY R. RIFKIN (246602)
LEONID KANDINOV (29650)
600 B Street, Suite 1900
San Diego, CA  92101
Tel: 619/525-3990
619/525-3991 (fax)
brobbins@robbinsarroyo.com
kseely@robbinsarroyo.com
arifkin@robbinsarroyo.com
lkandinov@robbinsarroyo.com

Attorneys for Plaintiff and the Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| LOUIS LIM, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES SCHWAB & CO., INC.,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**(1) VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200;**<br>**(2) BREACH OF FIDUCIARY DUTY;**<br>**(3) UNJUST ENRICHMENT; and**<br>**(4) DECLARATORY RELIEF**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

_(margin)_ BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

1    Plaintiff Louis Lim ("Plaintiff"), alleges the following based upon the investigation of

2 Plaintiff's counsel, which includes, among other things, a review of United States Securities

3 and Exchange Commission ("SEC") filings by Charles Schwab & Co., Inc. ("Schwab" or

4 "Defendant"), as well as regulatory filings and reports, advisories, press releases and media

5 reports concerning Schwab. Plaintiff believes that substantial additional evidentiary support

6 will exist for the allegations set forth herein after a reasonable opportunity for discovery.

7                              **NATURE OF THE CASE**

8    1.    This class action lawsuit seeks redress for Schwab's breach of its duty of "best

9 execution" when routing investment trades for execution on behalf of its customers, known as

10 "non-directed orders."[1] Schwab is a brokerage firm that executes orders for stock and other

11 investment trades on behalf of its clients. As part of providing trade execution services,

12 Schwab routes trades to trading venues that effectuate the purchase or sale of the equity.

13 Schwab selects the trading venue(s) that it wants to execute its customers' non-directed trades.

14 As detailed below, rather than determining which execution venue offers Class members the

15 best price, speed of execution, and likelihood that the trade will be executed, Schwab routes

16 nearly *all* of its customers' non-directed orders to UBS Securities LLC ("UBS") as a result of a

17 series of legally binding Equities Order Handling Agreements (the "Order Handling

18 Agreement(s)") between Schwab, The Charles Schwab Corporation ("CSC"), Schwab Capital

19 Markets L.P., and UBS (combined, the "Contract Parties"). This policy and practice violates

20 Schwab's duty of best execution, constituting a breach of Schwab's fiduciary duty to the

21 Class. This action seeks to end this practice by invalidating the provision of any current or

22 renewed Equities Order Handling Agreement that requires Schwab to route at least *95%* of its

23 customers' orders to UBS, and to disgorge the money Schwab wrongfully obtained as a result

24 of this improper arrangement.

25 ///

26 ///

27

28 [1]    Unless the client specifically instructs otherwise (thereby making it a "directed order" versus the normal "non-directed order"), the broker chooses the particular trading venue.

BLOOD HURST & O'REARDON, LLP

1

## **JURISDICTION AND VENUE**

2       2.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The

3    matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000

4    and is a class action in which there are in excess of 100 Class members and many members of

5    the Class are citizens of states different from Defendant. Further, greater than two-thirds of

6    the Class members reside in states other than the state in which Defendant is a citizen.

7       3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and 18 U.S.C.

8    § 1965 because many of the acts and transactions giving rise to this action occurred in this

9    District and because Defendant:

10              (a)     is headquartered in this District or does substantial business in this

11   District;

12              (b)     is authorized to conduct business in this District and has intentionally

13   availed itself of the laws and markets within this District; and

14              (c)     is subject to personal jurisdiction in this District.

15      4.      This Court has personal jurisdiction over Defendant because Defendant is an

16   entity with sufficient minimum contacts with this District so as to render the Court's exercise

17   of jurisdiction permissible under traditional notions of fair play and substantial justice.

18      5.      Intradistrict Assignment: Pursuant to Civil Local Rules 3-2(c)-(d), and 3-5(b),

19   Defendant is headquartered in San Francisco County, this action otherwise arises in San

20   Francisco County, and it is therefore appropriate to assign this action to the San Francisco

21   Division.

22                                          **PARTIES**

23      6.      Plaintiff is a retail customer of defendant Schwab. Plaintiff is a citizen of the

24   State of California and a resident of the county of Los Angeles. During the Class Period,

25   Plaintiff submitted equity trades through Schwab that were routed to UBS. Plaintiff and other

26   members of the Class are parties to an Account Agreement with defendant Schwab that

27   contains a "governing law" clause indicating that their relationship "shall be governed by the

28   law (but not the choice of law doctrines) of the state of California."

00084290

7.      Defendant Schwab is a California corporation, with its principal place of business in San Francisco, California.  Schwab is a broker dealer registered with the SEC pursuant to Section 15 of the Securities Exchange Act of 1934.  Schwab is party to the Equities Order Handling Agreements.  Schwab specializes in "mom and pop" retail investors, and maintains millions of client accounts that collectively hold over $2 trillion in assets. Schwab offers its brokerage services primarily online and over the phone, but also in person in over 300 branches nationwide.  Under Schwab's pricing model, customers are charged a flat fee or "commission" per trade.  The commission is dependent on the method by which an order is placed: $8.95 for orders placed through Schwab's website, $8.95 + $5.00 service charge for orders placed by phone, and $8.95 + $25.00 service charge for orders placed with the assistance and/or advice of a Schwab broker.

## BACKGROUND

8.      The Equities Order Handling Agreement issue in this case arose from a sales transaction involving the Contract Parties.  In September 2004, CSC sold UBS the proprietary trading technology and market making operations and correspondent business associated with SoundView Capital Markets ("SoundView") for $265 million.

9.      As part of the sale of SoundView, the Contract Parties entered into an Equities Order Handling Agreement on October 29, 2004.  The original Order Handling Agreement had an eight year term.  The Order Handling Agreement was renewed on its eighth anniversary on or around October 29, 2012.

10.      The Order Handling Agreement requires Schwab to send at least 95% of its non-directed customer orders to UBS.

11.      If Schwab sends less than 95% of its non-directed customer orders to UBS, then Schwab is liable for tens of millions of dollars in liquidated damages to UBS.  In particular, during the first three years after entering into the original Order Handling Agreement, Schwab was liable for as much as $58.5 million if it sent less than 95% of its non-directed customer orders to UBS in any 12-month period.  During the fourth year of the original arrangement, Schwab was liable for as much as $24.375 million if it sent less than 95% of its non-directed

BLOOD HURST & O'REARDON, LLP

00084290

3      Case No.
CLASS ACTION COMPLAINT

1    customer orders to UBS in the preceding 12-month period. During the fifth year of the

2    original arrangement, Schwab was liable for as much as $19.5 million if it sent less than 95%

3    of its non-directed customer orders to UBS in the preceding 12-month period. During the

4    sixth year of the original arrangement, Schwab was liable for as much as $14.625 million if it

5    sent less than 95% of its non-directed customer orders to UBS in the preceding 12-month

6    period. During the seventh year of the original arrangement, Schwab was liable for as much as

7    $9.75 million if it sent less than 95% of its non-directed customer orders to UBS in the

8    preceding 12-month period. During the eighth year of the original arrangement, Schwab was

9    liable for as much as $4.875 million if it sent less than 95% of its non-directed customer orders

10   to UBS in the preceding 12-month period.

11                      **SUBSTANTIVE ALLEGATIONS**

12   **Schwab's Best Execution Obligations**

13          12.     Schwab has a duty of fair dealing, a duty to use reasonable diligence to

14   ascertain the best market, and a duty of best execution in routing its clients' orders.

15          13.     The duty of best execution predates federal securities laws, and is rooted in

16   common law agency principles of undivided loyalty and reasonable care. In all instances, best

17   execution requires the broker to put the interests of its customers ahead of its own and to use

18   reasonable diligence so that the resultant price to the customer is as favorable as possible.

19          14.     Delivering best execution is fundamental to market integrity and to the delivery

20   of good outcomes for investors who rely on agents to act in their best interests. Pursuant to

21   best execution, brokers are required to use reasonable diligence to ascertain the best trading

22   venue so that the resultant price to the customer is as favorable as possible. Brokers, such as

23   Schwab, are not permitted to allow extraneous inducements to interfere with their duty of best

24   execution.

25          15.     In determining how to route Class member trades, Schwab is required to take

26   into account and examine material differences in execution quality among the various market

27   centers to which the orders may be routed, including execution price, market depth, order size

28   and trading character of the security, efficient and reliable order handling systems and market

BLOOD HURST & O'REARDON, LLP

4     Case No.
CLASS ACTION COMPLAINT

center service levels, speed, efficiency, and accuracy of executions.  Schwab is not permitted to allow any other factors to interfere with its duty of best execution.

16.     Schwab is required to regularly compare the quality of executions it is obtaining for Class member orders routed to UBS to the executions Schwab could obtain from competing market centers.  But Schwab does not choose the "best market" for Plaintiff and Class member trades because Schwab does not give due consideration to the particular security being traded, or other relevant factors.  Rather, Schwab has a binding contractual obligation to route nearly all trades to UBS.

**Schwab Routes Nearly All of Its Class Member Non-Directed Trades to UBS as Required by Contract**

17.     Schwab acts in derogation of the fiduciary duties owed to its customers by failing to even consider best execution for their orders.  In breach of its duty of best execution and in violation of applicable law, Schwab directs nearly all of its clients' trade orders to UBS, a pre-determined trading venue, pursuant to the Order Handling Agreements.

18.     Even though Schwab has eleven registered stock exchanges and more than fifty "alternate trading systems" to which Class member orders can be routed, Schwab sends virtually all Class member orders to a single venue, UBS.

19.     The Rule 606 Reports Schwab filed with the SEC further confirm that Schwab routes almost all of its clients' non-directed orders to UBS as required by the Order Handling Agreement.  For example, in the fourth quarter of 2014, Schwab routed between 93.8% of its non-directed orders for New York Stock Exchange, Inc. ("NYSE")-listed securities to UBS. Similarly, in the fourth quarter of 2014, Schwab routed 95.8% of its non-directed orders for NYSE Amex or Regional Exchange-listed securities to UBS.  In addition, in the fourth quarter of 2014, Schwab routed 93.9% of its non-directed orders for NASDAQ-listed securities to UBS.

20.     In the third quarter of 2014, UBS received 93.7% of Schwab's non-directed orders for NYSE-listed securities, 96% of Schwab's non-directed orders for NYSE Amex or

BLOOD HURST & O'REARDON, LLP

00084290

5       Case No.
CLASS ACTION COMPLAINT

1  Regional Exchange-listed securities, and 94.5% of Schwab's non-directed orders for

2  NASDAQ-listed securities.

3       21.    In the second quarter of 2014, UBS received 94.5% of Schwab's non-directed

4  orders for NYSE-listed securities, 95.7% of Schwab's non-directed orders for NYSE Amex or

5  Regional Exchange-listed securities, and 94.4% of Schwab's non-directed orders for

6  NASDAQ-listed securities.

7       22.    In the first quarter of 2014, UBS received 93.5% of Schwab's non-directed

8  orders for NYSE-listed securities, 93.9% of Schwab's non-directed orders for NYSE Amex or

9  Regional Exchange-listed securities, and 94% of Schwab's non-directed orders for NASDAQ-

10  listed securities.

11       23.    In the fourth quarter of 2013, UBS received 93.2% of Schwab's non-directed

12  orders for NYSE-listed securities, 96.5% of Schwab's non-directed orders for NYSE Amex or

13  Regional Exchange-listed securities, and 94.5% of Schwab's non-directed orders for

14  NASDAQ-listed securities.

15       24.    In the third quarter of 2013, UBS received 94.7% of Schwab's non-directed

16  orders for NYSE-listed securities, 92.8% of Schwab's non-directed orders for NYSE Amex or

17  Regional Exchange-listed securities, and 94.6% of Schwab's non-directed orders for

18  NASDAQ-listed securities.

19       25.    In the second quarter of 2013, UBS received 97.8% of Schwab's non-directed

20  orders for NYSE-listed securities, 96.5% of Schwab's non-directed orders for NYSE Amex or

21  Regional Exchange-listed securities, and 97.4% of Schwab's non-directed orders for

22  NASDAQ-listed securities.

23       26.    In the first quarter of 2013, UBS received 99.2% of Schwab's non-directed

24  orders for NYSE-listed securities, 99.7% of Schwab's non-directed orders for NYSE Amex or

25  Regional Exchange-listed securities, and 99.9% of Schwab's non-directed orders for

26  NASDAQ-listed securities.

27       27.    In the fourth quarter of 2012, UBS received 99.1% of Schwab's non-directed

28  orders for NYSE-listed securities, 99.5% of Schwab's non-directed orders for NYSE Amex or

BLOOD HURST & O'REARDON, LLP

6    Case No.

CLASS ACTION COMPLAINT

00084290

1   Regional Exchange-listed securities, and 99.9% of Schwab's non-directed orders for

2   NASDAQ-listed securities.

3        28.    In the third quarter of 2012, UBS received 99.4% of Schwab's non-directed

4   orders for NYSE-listed securities, 99.6% of Schwab's non-directed orders for NYSE Amex or

5   Regional Exchange-listed securities, and 99.9% of Schwab's non-directed orders for

6   NASDAQ-listed securities.

7        29.    In the second quarter of 2012, UBS received 98.7% of Schwab's non-directed

8   orders for NYSE-listed securities, 98.7% of Schwab's non-directed orders for NYSE Amex or

9   Regional Exchange-listed securities, and 93.8 % of Schwab's non-directed orders for

10   NASDAQ-listed securities.

11        30.    In the first quarter of 2012, UBS received 99.7% of Schwab's non-directed

12   orders for NYSE-listed securities, 99.9% of Schwab's non-directed orders for NYSE Amex or

13   Regional Exchange-listed securities, and 99.9% of Schwab's non-directed orders for

14   NASDAQ-listed securities.

15        31.    It appears that Schwab sends at least 95% of its non-directed orders to UBS in

16   any 12 month period as required by the Order Handling Agreement.

17        32.    By routing nearly all Class member non-directed orders to UBS pursuant to the

18   Order Handling Agreement, Schwab fails to exercise due care in executing its clients' orders,

19   which deprives Class members of more preferential trading opportunities in the wider

20   marketplace.  Schwab is not considering optimal execution price, market depth, order size and

21   trading character of the security, efficient and reliable order handling systems and market

22   center service levels, speed, efficiency, and accuracy of execution as it is required to do.

23   Schwab derogated its duty to use reasonable care in choosing the market center to which

24   individual (or categories of) orders should be routed.  Instead, Schwab lets its contractual

25   obligations determine its order routing decisions.

26        33.    Schwab's routing of nearly all Class member non-directed orders to UBS does

27   not allow Class members to receive the most advantageous price for their trades.  The Order

28   Handling Agreement explicitly allows UBS to trade against Class member orders for its own

BLOOD HURST & O'REARDON, LLP

1  account, and capture trading opportunities for itself that would be otherwise available to

2  Plaintiff and the Class in the broader marketplace, thus depriving them of the best price

3  available.

4     34.    In addition, UBS regularly and routinely executes Class member trades at

5  prices less favorable than the best price available in the broader marketplace, thus depriving

6  Plaintiff and Class members of the best execution for their orders.

<b><u>CLASS ACTION ALLEGATIONS</u></b>

8     35.    Plaintiff brings this case as a class action pursuant to Rules 23(b)(2), (b)(3), and

9  (c)(4) of the Federal Rules of Civil Procedure. The proposed Class consists of all persons who

10  placed non-directed orders with Schwab that were executed until the date notice is

11  disseminated to the Class.

12     36.    The Class excludes Schwab's officers and directors, current or former

13  employees, as well as their immediate family members, other broker dealers, as well as any

14  judge, justice or judicial officer presiding over this matter and members of their immediate

15  families and judicial staff.

16     37.    ***Numerosity.*** The members of the Class are so numerous that their individual

17  joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the

18  proposed Class contains thousands of members. While the precise number of Class members

19  is unknown to Plaintiff, it is known to Defendant.

20     38.    ***Existence and Predominance of Common Questions of Law and Fact.***

21  Common questions of law and fact exist as to all members of the Class and predominate over

22  any questions affecting only individual Class members. All members of the Class have been

23  subject to the same conduct and their claims arise from the same legal claims. The

24  common legal and factual questions include, but are not limited to, the following:

25     (a)    whether Schwab has a duty of best execution to Plaintiff and members

26  of the Class;

27     (b)    whether Schwab has an obligation to obtain the most favorable terms

28  reasonably available for the non-directed orders placed by Plaintiff and members of the Class;

BLOOD HURST & O'REARDON, LLP

00084290

8    Case No.<br>CLASS ACTION COMPLAINT

1                (c)      whether the Order Handling Agreements impede Schwab's duty of best

2 execution owed to Plaintiff and members of the Class;

3                (d)      whether Schwab engaged in unlawful or unfair business practices;

4                (e)      whether Schwab breached its fiduciary duty to Plaintiff and members of

5 the Class;

6                (f)      whether the Plaintiff and the Class are entitled to injunctive relief;

7                (g)      whether the Plaintiff and the Class are entitled to declaratory relief;

8                (h)      whether Schwab has been unjustly enriched by its improper course of

9 action;

10               (i)      whether any commissions or rebates received by Schwab in connection

11 with the non-directed orders made by Plaintiff and the Class should be disgorged; and

12               (j)      whether Plaintiff and members of the Class are entitled to equitable

13 relief, and the proper measure of that equitable relief.

14      39.    ***Typicality***. Plaintiff's claims are typical of the claims of the members of the

15 Class in that Plaintiff is a member of the Class that he seeks to represent.

16      40.    ***Adequacy of Representation***. Plaintiff will fairly and adequately protect the

17 interests of the members of the Class. Plaintiff has retained counsel experienced in the

18 prosecution of this type of class action litigation. Plaintiff has no adverse or antagonistic

19 interests to those of the Class.

20      41.    ***Superiority***. A class action is superior to all other available means for the fair

21 and efficient adjudication of this controversy. Individualized litigation would create the

22 danger of inconsistent or contradictory judgments arising from the same set of facts.

23 Individualized litigation would also increase the delay and expense to all parties and the court

24 system from the issues raised by this action. The burden and expense that would be entailed

25 by individual litigation makes it impracticable or impossible for Class members to prosecute

26 their claims individually. Further, the adjudication of this action presents no unusual

27 management difficulties.

28

BLOOD HURST & O'REARDON, LLP

00084290

1    42.    Unless a class is certified, Defendant will retain monies received as a result of

2    its improper conduct.  Unless a classwide injunction is issued, Schwab will continue to commit

3    the violations alleged, and will continue to violate its duties of best execution in connection

4    with orders placed by members of the Class.  Schwab has acted or refused to act on grounds

5    that are generally applicable to the Class so that injunctive and declaratory relief is appropriate

6    to the Class as a whole.

7                                          **COUNT I**

8            *Against Schwab for Violation of California Business & Professions Code § 17200*

9    43.    Plaintiff incorporates by reference and realleges each and every allegation

10   contained above, as though fully set forth herein.

11   44.    Plaintiff, on behalf of himself and the Class, brings this cause of action pursuant

12   to the California Business & Professions Code § 17200.

13   45.    Business & Professions Code § 17200 prohibits any "unlawful . . . business act

14   or practice."  Schwab has violated § 17200's prohibition against engaging in unlawful acts and

15   practices by, *inter alia*, failing to ensure that its order routing practices complied with its "best

16   execution" responsibilities.

17   46.    Business & Professions Code § 17200 also prohibits any "unfair . . . business

18   act or practice."  Schwab's acts and practices as alleged herein also constitute "unfair"

19   business acts and practices within the meaning of Business & Professions Code § 17200, *et*

20   *seq*.

21   47.    There were reasonably available alternatives to further Schwab's legitimate

22   business interests, other than the conduct described herein.

23   48.    Plaintiff is a "person" within the meaning of California Business and

24   Professions Code section 17204, has suffered injury, and lost money or property, and therefore

25   has standing to bring this cause of action for injunctive relief, restitution, disgorgement, and

26   other appropriate equitable relief.  Plaintiff is concerned about Schwab's practices and is

27   worried that the non-directed orders he places with Schwab have not been, and will not be,

28   executed pursuant to Schwab's "best execution duties."

BLOOD HURST & O'REARDON, LLP

00084290

10    Case No.
CLASS ACTION COMPLAINT

1    49.    Schwab has thus engaged in unlawful and unfair business acts and practices,

2    entitling Plaintiff to judgment and equitable relief, as set forth in the Prayer for Relief.

3    50.    Additionally, pursuant to Business & Professions Code § 17203, Plaintiff seeks

4    an order and injunction prohibiting Schwab from continuing with its improper market

5    selection and order routing practices that do not conform to its "best execution" duties.

6    ## COUNT II

7    ### *Against Schwab for Breach of Fiduciary Duty*

8    51.    Plaintiff incorporates by reference and realleges each and every allegation

9    contained above, as though fully set forth herein.

10    52.    Schwab owed fiduciary duties to Plaintiff and the Class, including duties of best

11    execution.

12    53.    Pursuant to its duty of best execution, Schwab was required to take into account

13    material differences in execution quality among trading venues, including using reasonable

14    diligence to ascertain the best trading venue so that the resultant price to Plaintiff and the Class

15    was as favorable as possible.  By utilizing the order routing policies and practices described

16    above, which included routing nearly all of its customers' trades to UBS pursuant to

17    contractual obligations, Schwab breached its fiduciary duty owed to Plaintiff and the Class.

18    54.    Schwab's customers have been damaged thereby, in an amount to be

19    determined at trial.

20    55.    As a result of Schwab's breach of fiduciary duty, Plaintiff and the Class are also

21    entitled to an accounting and injunctive relief.

22    ## COUNT III

23    ### *Against Schwab for Unjust Enrichment*

24    56.    Plaintiff incorporates by reference and realleges each and every allegation

25    contained above, as though fully set forth herein.

26    57.    By its wrongful acts and omissions, Schwab was unjustly enriched at the

27    expense of and to the detriment of Plaintiff and the Class.  Schwab was unjustly enriched as a

28

BLOOD HURST & O'REARDON, LLP

00084290

1  result of the compensation it received while breaching fiduciary duties owed to Plaintiff and

2  the Class.

3         58.     Plaintiff and the Class seek restitution from Schwab, and seek an order of this

4  Court disgorging all profits, benefits, and other compensation obtained by Schwab from its

5  wrongful conduct and fiduciary breaches.

6         59.     Plaintiff and the Class have no adequate remedy at law.

7  **COUNT IV**

8  ***Against Schwab for Declaratory Relief***

9         60.     Plaintiff incorporates by reference and realleges each and every allegation

10  contained above, as though fully set forth herein.

11         61.     A controversy has arisen and now exists between Plaintiff and Class members

12  on the one hand and Schwab on the other. The controversy between the parties concerns

13  Schwab's trade-routing policy and practice and its duty of best execution owed in connection

14  with the trade orders it routes on behalf of Plaintiff and the Class. Plaintiff and Class members

15  contend that by pre-determining where it will automatically route non-directed limit orders in

16  the aggregate based on contractual obligations to UBS, Schwab violates its duty of best

17  execution, including because it fails to use reasonable diligence to ascertain the best trading

18  venue so that the resultant price to the customer is as favorable as possible. Schwab disputes

19  these contentions and contends that it does not violate its duty of best execution when routing

20  its customers' orders.

21         62.     Plaintiff requests a judicial determination of his rights and duties, and the rights

22  and duties of absent Class members and a declaration as to whether Schwab's order routing

23  practice breaches the duty of best execution owed to Plaintiff and Class members.

24  **PRAYER FOR RELIEF**

25       WHEREFORE, Plaintiff prays for relief in interim orders and by way of entry of final

26  judgment in his favor, in favor of those he seeks to represent, and against Defendant:

27       A.     Certifying this action as a class action and appointing Plaintiff as class

28  representative and his counsel as class counsel;

BLOOD HURST & O'REARDON, LLP

00084290

BLOOD HURST & O'REARDON, LLP

B.    Invalidating the provision of the current and any renewed Equities Order Handling Agreements that requires Schwab to route at least 95% of its customer's orders to UBS;

C.    Awarding declaratory and injunctive relief as permitted by law or equity, including a judicial determination of the parties' rights and duties, enjoining Schwab from continuing the unlawful practices as set forth herein (including the improper order routing practices), imposing a constructive trust on all monies wrongfully obtained by Schwab, and directing Schwab to identify, with Court supervision, victims of its conduct and pay them damages, restitution and/or disgorgement of all monies acquired by Schwab by means of any act or practice declared by this Court to be wrongful;

D.    Awarding attorney's fees and costs; and

E.    Granting Plaintiff and the Class such other relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury for all of the claims asserted in this Complaint so triable.

Dated: May 8, 2015                    BLOOD HURST & O'REARDON, LLP
                                      TIMOTHY G. BLOOD (149343)
                                      THOMAS J. O'REARDON II (247952)
                                      SARAH BOOT (253658)


                                      By:        s/ Timothy G. Blood
                                             TIMOTHY G. BLOOD

                                      701 B Street, Suite 1700
                                      San Diego, CA  92101
                                      Tel: 619/338-1100
                                      619/338-1101 (fax)
                                      tblood@bholaw.com
                                      toreardon@bholaw.com
                                      sboot@bholaw.com

                                      ROBBINS ARROYO LLP
                                      BRIAN J. ROBBINS (190264)
                                      KEVIN A. SEELY (199982)
                                      ASHLEY R. RIFKIN (246602)
                                      LEONID KANDINOV (29650)

13        Case No.

CLASS ACTION COMPLAINT

00084290

BLOOD HURST & O'REARDON, LLP

1    600 B Street, Suite 1900
     San Diego, CA  92101
2    Tel: 619/525-3990
     619/525-3991 (fax)
3    brobbins@robbinsarroyo.com
     kseely@robbinsarroyo.com
4    arifkin@robbinsarroyo.com
     lkandinov@robbinsarroyo.com
5
     FINKELSTEIN & KRINSK LLP
6    JEFFREY R. KRINSK (109234)
     WILLIAM R. RESTIS (246823)
7    DAVID J. HARRIS, JR. (286204)
     550 West C Street, Suite 1760
8    San Diego, CA  92101
     Tel: 619/238-1333
9    619/238-5425 (fax)
     jrk@classactionlaw.com
10   wrr@classactionlaw.com
     djh@classactionlaw.com
11
     *Attorneys for Plaintiff and the Class*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

00084290